# In the United States Court of Federal Claims

### OFFICE OF SPECIAL MASTERS
### No. 18-627V
### Filed: October 28, 2022
PUBLISHED

|  |  |
|---|---|
| SHERRI PAIGE, | Special Master Horner |
| Petitioner, | |
| v. | Date of vaccination; |
| | Reasonable basis; Attorneys' |
| SECRETARY OF HEALTH AND | fees and costs; Denial |
| HUMAN SERVICES, | |
| Respondent. | |

*Bridget Candace McCullough, Muller Brazil, LLP, Dresher, PA, for petitioner.*
*Mary Eileen Holmes, U.S. Department of Justice, Washington, DC, for respondent.*

## DECISION DENYING ATTORNEYS' FEES AND COSTS[1]

On May 5, 2018, petitioner filed a claim under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-10-34 (2012), alleging that she suffered transverse myelitis as a result of her receipt of an influenza ("flu") vaccination on October 9, 2015. (ECF No. 1.)  After an unfavorable finding of fact regarding the date of vaccination, petitioner moved to voluntarily dismiss her claim.  (ECF Nos. 74, 78-79.)  Petitioner subsequently moved for an award of attorneys' fees and costs, which respondent opposes on the basis that petitioner lacked a reasonable basis for the filing of her petition.  (ECF Nos. 84, 86.)  For the reasons discussed below, I conclude that petitioner did not have a reasonable basis for filing her petition and her motion is denied.

---

[1] Because this decision contains a reasoned explanation for the special master's action in this case, it will be posted on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002.  *See* 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).  **This means the decision will be available to anyone with access to the Internet.**  In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information the disclosure of which would constitute an unwarranted invasion of privacy. If the special master, upon review, agrees that the identified material fits within this definition, it will be redacted from public access.

## I.      Procedural History

As noted above, the petition initiating this claim alleged a vaccination date of October 9, 2015.  (ECF No. 1, p. 1.)  However, the petition was accompanied by records including a vaccine administration record for the vaccination at issue dated November 11, 2015.  (Ex. 1, p. 1.)  In the affidavit accompanying her petition, petitioner explained the circumstances of her vaccination as follows:

> I received the influenza vaccination on October 9, 2015.  At the time of the vaccination, I was employed at Generations Family Health Clinic, Inc. . . . On that date, my supervisor administered the vaccination while we were operating a mobile health clinic. The paperwork documenting my vaccination was completed two days later on October 11, 2015.

(ECF No. 1-13; Ex. 8, p. 1.)

Respondent filed his Rule 4 Report on April 29, 2019, along with a motion to dismiss.[2]  (ECF No. 23.)  Respondent noted the discrepancy between the date of vaccination alleged in the petition and the date reflected on petitioner's vaccination record.  He contended that petitioner's vaccination could not be the cause of her injury because her symptoms began in early October and the correct date of vaccination was November 11, 2015, rather than October 9, 2015.  (*Id*. at 2, 10.)  Respondent also disputed petitioner's diagnosis, contending that the medical records favored thoracic spinal stenosis rather than transverse myelitis.  (*Id*. at 10-11.)

Petitioner was given an opportunity to litigate the question of the date of her vaccination.  While the case was pending, petitioner developed the factual record as follows:

- Petitioner subpoenaed her employer for her employment records (ECF Nos. 25, 26), which were then filed into the record of the case (ECF No. 30; Ex. 14).

- Petitioner separately subpoenaed her employer for records relating to the mobile health clinic referenced in her affidavit.  (ECF Nos. 33, 36.)  They reproduced portions of petitioner's employment file.  (ECF No. 42-1; Ex. 16.)

- Petitioner filed a copy of a text message from her supervisor, Nicole Jones, discussing petitioner's efforts to obtain documentation of her flu vaccination and referencing the date of vaccination as "10/9/15."  (ECF No. 28; Ex. 13.)

_____

[2] The motion to dismiss was later withdrawn.  (ECF No. 46.)

2

- Petitioner subpoenaed records from T-Mobile for further documentation related to that text message.  (ECF No. 37-38.)  T-Mobile advised that they do not store or maintain the contents of text messages and did not otherwise produce any relevant records.  (ECF No. 42-2; Ex. 17.)

- Petitioner filed an email from the director of human resources at her employer confirming that petitioner had worked on the mobile health clinic with Ms. Jones on October 9, 2015, but indicating that Ms. Jones would not be made available for any informal conversation regarding the matter. (ECF No. 44; Ex. 18.)

- Petitioner sat for a deposition and also deposed her supervisor, Ms. Jones.  (ECF No. 58 (Paige Deposition as Exhibit 24 and Jones Deposition as Exhibit 25).)

- Petitioner filed a statement from an additional witness, Ingrid Aldridge, identified in the course of her deposition.  (ECF No. 68; Ex. 42.)

- Petitioner served written interrogatories on her employer seeking information regarding the vaccine lot numbers both for the vaccines administered by the mobile health unit and as referenced on her vaccine administration record.  (ECF No. 68; Ex. 41.)

After the above-referenced depositions were conducted, I advised that any determination regarding the reasonableness of incurring expert costs should be deferred until the factual question of the date of vaccination was resolved.  (ECF No. 62.)  Subsequently, petitioner moved for a finding of fact regarding the date of her vaccination.  (ECF No. 72.)

On April 12, 2021, I issued a finding of fact concluding that the evidence preponderated in favor of a vaccination date of November 11, 2015, as reflected in the vaccine administration record, rather than October 9, 2015, as petitioner had alleged. (ECF No. 74.)  Petitioner neither pleaded significant aggravation nor sought any opportunity to explore such a theory.  Instead, following this adverse ruling, petitioner voluntarily moved for dismissal and a decision dismissing the case was issued on June 11, 2021.  (ECF Nos. 78-79.)

Subsequently, petitioner filed the instant motion for attorneys' fees and costs on December 19, 2021.  (ECF No. 84.)  Respondent filed an opposition on February 1, 2022, and petitioner filed a reply on March 17, 2022.  (ECF Nos. 86, 89.)  Accordingly, this motion is now ripe for resolution.

## II.     Factual History and Prior Finding of Fact

The factual history is examined in much greater detail in the prior finding of fact. (*See* ECF No. 74.)  This summary focuses on facts necessary to understand the reasonable basis issue raised by the parties.

Petitioner first presented for care of the condition placed at issue in this case in November of 2015 (Ex. 2, pp. 49-55, 66-69) and continued to seek care throughout 2016 and 2017.  Petitioner's physicians were unsure whether her condition represented a demyelinating condition, such as transverse myelitis or multiple sclerosis, or a degenerative spinal condition.  Throughout this course of treatment, petitioner's vaccination history was never discussed with her physicians until June 9, 2017, when petitioner mentioned for the first time to her neurologist that she "now remembers" that her symptoms began after a flu vaccination in October of 2015, which at that time was over a year and a half earlier.  (Ex. 6, pp. 19-33.)  Thus, petitioner's petition and accompanying affidavit ultimately indicate the date of her flu vaccination as October 9, 2015.  (ECF No. 1; Ex. 8.)

Petitioner testified that it was after she realized the potential correlation between the flu vaccine and transverse myelitis that she began seeking clarification from her employer regarding the specific date of her prior vaccination.  (Ex. 24, p. 19.)  Petitioner described interactions culminating in the text message from her supervisor, Ms. Jones, from late June of 2017 that petitioner filed into the record of this case.[3]  (*Id*. at 20-23.)  In that text, Ms. Jones responds to a request from petitioner regarding documentation of her flu shot, indicating that the documentation she seeks is in her employee file.  (Ex. 13, p. 1.)  Pertinent to petitioner's claim, she refers to the vaccination at issue as "[y]our Flu shot documentation from 10/9/15."  (*Id*.)  Ms. Jones testified, however, that the text is not an acknowledgment of the date of vaccination.  Rather, she was merely repeating back what petitioner had stated was the date of vaccination and did not have access to the relevant vaccination record at the time.  (Ex. 25, p. 29, 31-32.)  Petitioner only ever filed this one incoming text message and never provided copies of any of the text(s) that prompted this reply.

Subsequent to these interactions, petitioner filed her petition in 2018.  However, as explained above, petitioner's initial filing included a vaccine administration record dated November 11, 2015.  (Ex. 1.)  Deposition testimony by petitioner and her supervisor, Ms. Jones, confirmed the authenticity of the document.  Specifically, petitioner confirmed during her deposition that she completed the questionnaire portion of the form and also confirmed that she herself dated the form in two separate locations with the date November 11, 2015.  (Ex. 24, p. 17-18.)  Both petitioner and Ms. Jones agree that Ms. Jones subsequently completed the "clinic use" portion of the form.  (*Id*.;

---

[3] Petitioner actually testified that the text was sent in March of 2016; however, other evidence of record places the text as having been sent in June of 2017.  (*See* ECF No. 74, p. 11.)

4

*see also* Ex. 25, pp. 26-28.)  Petitioner testified that completion of the form was prompted by Ms. Jones informing petitioner that the form needed to be completed belatedly due to the fact that her prior vaccination, which she recalls having been administered October 9th, had not been properly documented at the time.  (Ex. 24, p. 18.)  However, Ms. Jones testified that she administered petitioner's vaccination at the same time the form was completed.  (Ex. 25, pp. 22-23.)  Petitioner never provided any explanation as to why she initially filled out the form using what she contends is an incorrect date of administration.

According to petitioner's affidavit and testimony, she was vaccinated by Ms. Jones on October 9, 2015, while the two were working on a mobile clinic administering flu vaccinations to migrant farm workers.  (Ex. 8, p. 1; Ex. 24, pp. 10-11.)  The fact that both petitioner and Ms. Jones worked on the mobile clinic on that date is well supported by record evidence.  However, there are several substantial issues with petitioner's recollection vis-à-vis the recordkeeping relating to both her own vaccination and the vaccinations administered to the public on that date.  These issues fatally undercut the basis for petitioner's recollection that she was vaccinated on October 9, 2015.

First, petitioner's testimony was not consistent.  Petitioner's first affidavit indicated that her flu vaccine was documented only two days late, on October 11, 2015.  (Ex. 8, p. 1.)  However, this is clearly not the case given the actual vaccine administration record filed with the petition and petitioner's testimony authenticating it.  (Ex. 1; Ex. 24.)  In a supplemental affidavit filed in this case, petitioner further indicated the reason her vaccination was not initially documented on October 9th was because patient vaccinations were being documented electronically on the mobile clinic.  She explained that patients "had their data input in to an electronic chart.  As an employee, I did not have an electronic chart and the vaccination was not documented contemporaneously with its administration."  (Ex. 15, p. 1.)  However, petitioner subsequently uncovered evidence confirming that mobile clinic patients initially had their vaccinations documented on paper, which prompted the facility to have to later go back and input the information from the paper forms into the electronic system.  (Ex. 36, p. 2 (contemporaneous email by petitioner noting there had been no laptop at the vaccination event).)  Petitioner had been personally involved in that process.  (*Id.*; Ex. 25, pp. 21-22.)  Thus, when petitioner testified at deposition, she contradicted her affidavit and explained the mobile clinic vaccination process as involving paper forms, negating her original basis for recalling why she did not have a vaccine administration form from October 9th.  (Ex. 24, pp. 9-10.)  Petitioner never explained why her vaccination could not have been documented using the paper forms that were available at that time.

Second, the other evidence petitioner sought to collect did not corroborate her account.  During her deposition, petitioner noted that her officemate, Ingrid Aldridge, may have been witness to the creation of the November 11, 2015 record.  (Ex. 24, pp. 18, 53-54.)  Ms. Aldridge subsequently submitted a statement.  In her statement, Ms.

Aldridge did not provide any information regarding the November 11th record, but did recall a conversation in which petitioner asked for Ms. Aldridge's assistance obtaining vaccine lot numbers for the vaccines that had been administered on October 9th on the mobile clinic.  (Ex. 42.)  Ms. Aldridge could not recall the date of that discussion, but reported that petitioner was looking for this information in connection with filling out her own vaccination record.  (*Id*.)  Importantly, however, both petitioner and Ms. Jones testified that it was Ms. Jones who completed the portion of petitioner's vaccine record that included the lot number.  (Ex. 24, pp. 37, 40; Ex. 25, pp. 26-27.)  Furthermore, petitioner specifically testified that she did not know how Ms. Jones obtained the vaccine lot information for her vaccine administration record.  (Ex. 24, p. 40.)  Further still, an interrogatory response from petitioner's employer confirms that the lot number listed on petitioner's vaccine record is not consistent with vaccine lot used for vaccinations at the October 9th mobile clinic event.  (Ex. 41.)

Petitioner's testimony provided two other bases for recalling that she was vaccinated in October rather than November.  First, she recalled that she attended a concert on October 16, 2015.  This was primarily raised with respect to recalling the onset of petitioner's condition rather than the date of her vaccination, but she did indicate that she recalled feeling confident any post-vaccination reaction would be over by the time of the concert.  (Ex. 15, p. 1.)  Second, she recalled that there was a deadline for nurses to be vaccinated and that, if she had not been vaccinated by November 1, she would have been required to wear a mask.  However, petitioner never actually testified regarding whether she did wear a mask and Ms. Jones provided testimony suggesting that enforcement of the requirement was not robust.  (Ex. 24; Ex. 25, pp. 32-33, 47.)

In the finding of fact issued April 12, 2021, I found that the November 11, 2015 vaccine administration record was "facially valid and complete," authenticated by both petitioner and Ms. Jones, and therefore entitled to "substantial weight."  (ECF No. 74, pp. 14-15.)  Noting that it is possible for testimony to overcome the weight afforded contemporaneous records, I explained that petitioner's testimony is not sufficiently reliable to overcome the weight due her vaccine administration record.  (*Id*. at 15.) I indicated that petitioner's account of the circumstances surrounding her vaccination, which was not clear and consistent in itself, was both "uncorroborated and contradicted by other record evidence."  (*Id*.)  Furthermore, I indicated that the case raises a fundamental credibility issue, because petitioner acknowledges that she was the author of the document she later refuted.  (*Id*. at 17.)  "Thus, in order to accept her own account of her vaccination as credible, I would also have to accept that she either mistakenly or willfully completed and signed a vaccination record falsely identifying the date of her vaccination."  (*Id*.)

### III.    Party Positions

Petitioner's initial motion was limited to substantiating the amount of attorneys' fees and costs sought and included no argument with respect to reasonable basis. (ECF No. 84.)  However, respondent's response stressed that reimbursement of fees and costs is not mandatory given petitioner's dismissal of her case and that petitioner bears a burden of proving her petition was brought in good faith and with a reasonable basis.  (ECF No. 86, p. 2.)  Respondent did not raise any challenge to petitioner's good faith in bringing the claim, but contested that the evidentiary support for the petition established a reasonable basis for its filing.  (*Id*. at 4.)

Respondent argues with respect to the initial filing of the petition that "petitioner filed her claim without objective evidence that she in-fact received a vaccination covered by the Vaccine Injury Table prior to the onset of her alleged injury.  As such, petitioner's claim patently fails the filing requirements set forth by the Vaccine Injury Act."  (*Id*. at 5.) Respondent further argues that petitioner never subsequently uncovered any further evidence during the pendency of the case that would support reasonable basis. Respondent quotes the following from the undersigned's finding of fact: "Despite significant efforts seeking to investigate the circumstances of petitioner's 2015 flu vaccination, petitioner was unable to discover any significant evidence, apart from petitioner's own testimony, contradicting her vaccination record."  (*Id*. at 6 (quoting ECF No. 74, p. 15).)

In her reply, petitioner argues that she did file objective evidence supporting a reasonable basis for her petition.  (ECF No. 89.)  Petitioner focuses on evidence in the record that supported petitioner's recollection that she worked on the mobile health clinic with Ms. Jones on October 9, 2015, deposition testimony regarding the employer's mask mandate for the unvaccinated, the statement by Ms. Aldridge that petitioner discussed vaccine lot numbers with her in the context of filling out her flu vaccination record, and petitioner's specific recollection of having been vaccinated prior to a specific concert she attended on October 16, 2015.  (*Id*. at 6-7.)  Petitioner contends she had a reasonable basis to pursue her claim up to the point of my finding of fact.[4]  (*Id*. at 7-8.)

### IV.    Legal Standard

The Vaccine Act permits an award of reasonable attorneys' fees and costs. § 15(e).  Petitioners who are denied compensation for their claims brought under the Vaccine Act may be awarded attorneys' fees and costs "if the Special Master or Court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought."  42 U.S.C. § 300aa-15(e)(1); *Cloer v.*

---

[4] The Federal Circuit has confirmed that a case can lose its reasonable basis as it proceeds.  *Pereira v. Sec'y of Health & Human Servs.*, 33 F.3d 1375, 1376-77 (Fed. Cir. 1994).  However, given that I have concluded petitioner did not have a reasonable basis at the outset and given that petitioner dismissed her claim shortly after the finding of fact, I do not find it necessary to reach that specific question.

*Sec'y of Health & Human Servs.*, 675 F.3d 1358, 1360-61 (Fed. Cir. 2012).  Such an award is within the discretion of the Special Master.  42 U.S.C. § 300aa-15(e)(1).  Thus, even if a claim is brought in good faith and has a reasonable basis, a special master may still deny attorneys' fees.  *See* 42 U.S.C. § 300aa-15(e)(1); *Cloer*, 675 F.3d at 1362.  "Good faith" and "reasonable basis" are two distinct requirements under the Vaccine Act.  *Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017).

"Good faith" is a subjective standard.  *Hamrick v. Sec'y of Health & Human Servs.*, No. 99-683V, 2007 WL 4793152, at *3 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).  A petitioner acts in "good faith" if he or she holds an honest belief that a vaccine injury occurred.  *Turner v. Sec'y of Health & Human Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007).  The standard for finding good faith has been described as "very low," and findings that a petition lacked good faith are rare.  *Heath v. Sec'y of Health & Human Servs.*, No. 08-86V, 2011 WL 4433646, *2 (Fed. Cl. Spec. Mstr. Aug. 25, 2011).  Good faith is not challenged in this case.

"Reasonable basis," however, is an objective standard.  Unlike the good faith inquiry, reasonable basis requires more than just petitioner's belief in her claim.  *See Turner*, 2007 WL 4410030, at *6.  In *Cottingham v. Secretary of Health & Human Services*, the Federal Circuit explained that to demonstrate a "reasonable basis," the petitioner must come forward with objective evidence relating to the Vaccine Act's prima facie petition requirements for the filing of a claim.  971 F.3d 1337, 1345-46 (Fed. Cir. 2020).  Specifically, the petition must include an affidavit and supporting documentation demonstrated that the injured vaccinee:

> (1) received a vaccine listed on the Vaccine Injury Table;
> (2) received the vaccination in the United States, or under certain stated circumstances outside of the United States;
> (3) sustained (or had significantly aggravated) an injury as set forth in the Vaccine Injury Table (42 C.F.R. § 100.3(e)) or that was caused by the vaccine;
> (4) experienced the residual effects of the injury for more than six months, died, or required an in-patient hospitalization with surgical intervention; and
> (5) has not previously collected an award or settlement of a civil action for damages for the same injury.

*Id*. (citing § 300aa-11(c)(1).)  In *Cottingham*, as in most reasonable basis inquiries, it was the third element—the fact of any causal relationship—that was at issue.  *Id*. at 1346.  Here, however, the primary issue given the reason for dismissal is the first of the above-listed requirements—the fact of whether any vaccination occurred on October 9th as alleged.  *E.g.*, *Gomez v. Sec'y of Health & Human Servs.*, No. 17-1800V, 2019 WL 7480769 (Fed. Cl. Dec. 6, 2019) (Court of Federal Claims finding contradictory vaccine

administration record undermined reasonable basis for petition alleging vaccination on a different date).

To establish a reasonable basis for attorneys' fees, the petitioner need not prove a likelihood of success. *See Woods v. Sec'y of Health & Human Servs.*, No. 10-377V, 2012 WL 4010485, at *6-7 (Fed. Cl. 2012). In general, a reasonable basis analysis "may include an examination of a number of objective factors, such as the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa v. Sec'y of Health & Human Servs.*, 138 Fed. Cl. 282, 289 (2018); *accord Cottingham*, 971 F.3d 1337. "More than a mere scintilla but less than a preponderance of proof could provide sufficient grounds for a special master to find reasonable basis." *Cottingham*, 917 F.3d at 1346. For the reasonable basis requirement, "the burden is on the petitioner to affirmatively demonstrate a reasonable basis." *McKellar v Sec'y of Health & Human Servs.*, 101 Fed. Cl. 297, 305 (2011).

More than a mere scintilla of evidence has been characterized as "evidence beyond speculation that provides a sufficient basis for a reasonable inference . . . ." *Cottingham v. Sec'y of Health & Human Servs.*, 154 Fed. Cl. 790, 795 (2021) (citing *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 765 (4th Cir. 2021)). A reasonable basis may be demonstrated by circumstantial evidence. *Cottingham*, 971 F.3d. at 1346. A petitioner's testimony constitutes objective evidence that must be considered in determining whether there is a reasonable basis when it contains testimony the witness is competent to give, but a special master is not required to find that the testimony alone constitutes more than a mere scintilla of evidence. *James-Cornelius v. Sec'y of Health & Human Servs.*, 984 F.3d 1374, 1380-81 (Fed. Cir. 2021). Particularly, "medical records may serve as important corroborating evidence for evaluating testimony's credibility." *James-Cornelius*, 984 F.3d. at 1380.

With regard to the specific context of this case, one prior Court of Federal Claims decision is particularly informative, though not binding. *Gomez v. Sec'y of Health & Human Servs.*, No. 17-1800V, 2019 WL 7480769 (Fed. Cl. Dec. 6, 2019). In *Gomez*, as the Court framed it, "The question on review is a novel one: Whether a petitioner had a reasonable basis to file a petition based on a December 2014 flu vaccination when the vaccination records submitted along with the petition show that the actual vaccination occurred on October 3, 2014?" *Id.* at *1. As in this case, the *Gomez* petitioner's records included seemingly valid documentation of the date of vaccination (in that case documenting an October 3, 2014 administration) while also documenting that petitioner subsequently reported to his physician months later that the vaccination had been administered at a different time (in that case December 2014). *Id.* at *1-2.

In *Gomez*, the difference between the two dates was determinative of whether the petition had been timely filed. The Chief Special Master concluded that the evidence preponderated in favor of the date reflected on the administration record and

dismissed the case as untimely.  2018 WL 4611640 (Fed. Cl. Spec. Mstr. June 25, 2018).  However, when petitioner subsequently moved for an award of attorneys' fees and costs, the Chief Special Master concluded that there was a reasonable basis for filing a petitioner based on the allegation of a December 2014 vaccination.  The Chief Special Master noted that petitioners in the program are not necessarily obligated to come forward with contemporaneous documentation to prove the fact of a vaccination and further that contemporaneous medical records are generally given significant weight.  2019 WL 5791232, at *7-8 (Fed. Cl. Spec. Mstr. Aug. 9, 2019).  Given these considerations, the Chief Special Master concluded that the later reports of a December 2014 vaccination in the subsequent treatment records was sufficient to confer a reasonable basis.  *Id*.

On review, the Court of Federal Claims acknowledged, but rejected, the considerations cited by the Chief Special Master.  2019 WL 7480769, at *5.  The Court stressed that "petitioner provided a sworn affidavit stating that the vaccination occurred in December of 2014 along with medical records reflecting his own recollection of the injury and December 2014 vaccination; however, the vaccination records simultaneously submitted with the petition conclusively establish that the vaccination occurred on October 3, 2014."  *Id*.  The Court concluded that "[p]etitioner's vaccination records contradict his recollection of a December 2014 vaccination.  He thus knew or should have known that his claim was time-barred."  *Id*. at 6.  Therefore, there was not a reasonable basis for filing the petition.  *Id*.

The Court went on to indicate that the subjective recollection contained in the later medical records is "some evidence" of a vaccination, but "different in kind" from the official vaccination record.  *Id*.  As explained above, however, the Federal Circuit subsequently clarified in 2021 that "[w]hile lay opinions as to causation or medical diagnosis may be properly characterized as 'subjective belief' when the witness is not competent to testify on those subjects, the same is not true for sworn testimony as to facts within the witness's personal knowledge, such as the receipt of a vaccine and the timing and severity of symptoms."  *James-Cornelius*, 984 F.3d at 1380.  In that regard the Circuit held that affidavits cannot be categorically rejected as not objective evidence.  *Id*.

Importantly, however, the *Gomez* Court further observed that, if the documents accompanying the petition had not included the contradictory vaccination record, the Court would agree with the Chief Special Master that the subsequent medical records could support a reasonable basis in the absence of an administration record.  *Id*. at n.5.  Thus, the outcome in *Gomez* was dictated primarily by the strength of the official vaccination record and, despite referring to the petitioner's recollection as "subjective," does not appear to have treated the witness recollection in a "categorical" fashion as proscribed by *James-Cornelius*.  Accordingly, the subsequent *James-Cornelius* decision does not cast doubt on the usefulness of this prior decision.

Similarly, I also concluded in a prior case that a subsequent report to treating physicians regarding the fact of vaccination could support a reasonable basis where petitioner otherwise failed to preponderantly establish the fact of vaccination. *Matthews v. Sec'y of Health & Human Servs.*, 19-414V, 2022 WL 12184251, at *5-6 (Fed. Cl. Spec. Mstr. Sept. 23, 2022). Consistent with the Court of Federal Claims' observation in *Gomez*, however, that case was notable for the lack of any vaccination record to directly weigh against petitioner's recollection. Moreover, the report was made during the petitioner's initial hospitalization for his condition, not many months after the fact.

## V.   Analysis

The circumstances of this case are not exactly analogous to the above-discussed *Gomez* case. *Gomez* involved an additional statute of limitations issue. Additionally, the vaccination record in *Gomez* was generated by a healthcare facility in the ordinary course of treatment. Here, however, petitioner's vaccination was administered in the course of her employment. Petitioner was involved in the creation of her record and does offer substantial testimony regarding the circumstances of her alleged October 9th vaccination. Moreover, subsequent to issuance of the *Gomez* decision, the Federal Circuit in *James-Cornelius* underscored the importance of examining such testimony as objective evidence potentially supporting a reasonable basis. Even still, there is no obvious reason the outcome in this case should be different from that in *Gomez*.

Although petitioner did challenge the validity of her vaccine administration record, as explained above, I ultimately concluded that petitioner had authenticated the record and confirmed that the record was dated by her own hand. Thus, I concluded that the record was due "substantial weight." (ECF No. 74, p. 15.) Moreover, while the Federal Circuit's *James-Cornelius* holding requires an examination of the testimonial evidence, I further concluded that petitioner's testimony was not reliable due to multiple inconsistencies. (*Id.*) In addition to being contradicted by her vaccination record, petitioner's account was not meaningfully corroborated and was, in fact, contradicted by other evidence of record, including by testimony of the vaccine administrator who testified the vaccine was administered on the date reflected on the administration record. (*Id.* citing Ex. 25, pp. 22-24).) Furthermore, I explained that the fact that petitioner sought to refute a document she herself prepared presented a fundamental credibility issue. (*Id.* at 17.) Given the conflict, petitioner necessarily could not be credible in all respects—either her testimony or her treatment of the administration record was evidence against her credibility. Petitioner had failed to provide any explanation as to why the form was completed using an incorrect date.

In her motion reply, petitioner relies broadly on evidence supporting petitioner's and Ms. Jones's presence on the mobile clinic on October 9th. (ECF No. 89, p. 6.) There is no question that petitioner's recollection of having been together with Ms. Jones on the mobile clinic on October 9th is correct. However, evidence tending to confirm that petitioner and Ms. Jones were together on the mobile clinic only serves to

make petitioner's version of events possible.  Given that petitioner and Ms. Jones were there to execute unrelated work duties, it does not provide evidence that petitioner was vaccinated on that date.  Conversely, there is also no question that Ms. Jones and petitioner were together on the date the vaccine administration record was completed.

Petitioner also relies upon her testimony that there was a November 1 vaccine mandate deadline.  (ECF No. 89, p. 7 (citing Ex. 24, p. 11).)  Petitioner suggests that if she had not been vaccinated by November 1, she would have been required to wear a mask.  Importantly, however, as observed in the finding of fact, petitioner did not actually offer testimony specifying whether she wore, or was asked to wear, a mask.  Furthermore, Ms. Jones's testimony indicated that in any event enforcement of that requirement was lax at that time.  (Ex. 25, p. 32.)

Petitioner further cites the statement by Ms. Aldridge as evidence supporting her recollection.  (ECF No. 89, p. 7 (citing Ex. 42).)  However, Ms. Aldridge's statement does not support petitioner's version of events.  Ms. Aldridge indicated that petitioner sought her help determining the vaccine lot that was used for vaccinations on the mobile clinic and further stated that this was so that she could complete her vaccination form.  (Ex. 42.)  However, petitioner disclaimed completing that portion of her vaccine administration form and further disclaimed any knowledge of how Ms. Jones obtained the lot number for the form.  (Ex. 24, pp. 37, 40.)  And, in any event, the lot number indicated on petitioner's vaccine administration record is not the same as the lot number used for the vaccinations on the mobile clinic.  (Ex. 41.)

Finally, petitioner relies on that aspect of her recollection that places her flu vaccine prior to the concert she attended in October.  (ECF No. 89, p. 7.)  This does constitute a separate recollection from those discussed above; however, given the overall reliability and credibility issues presented by petitioner's testimony, and given the other evidence of record, this does not constitute the more than a mere evidence of scintilla of evidence petitioner is required to present.

Especially given that she herself completed the vaccine administration record, petitioner clearly knew, or should have known, at the time she filed her petition that she was filing supporting evidence that directly contradicted and fatally undercut her allegations.  Petitioner did accompany her petition with an affidavit including her recollection that she was vaccinated on the mobile health unit; however, that affidavit failed on its face to explain the November 11th date actually included on the vaccine administration record that was filed with the petition.  As respondent observed in his motion response, "[d]espite significant efforts seeking to investigate the circumstances of petitioner's 2015 flu vaccination, petitioner was unable to discover any significant evidence, apart from petitioner's own testimony, contradicting her vaccination record." (ECF No. 86, p. 6 (quoting ECF No. 74, p. 15).)  Nor has petitioner offered any evidence to support any reasonable basis for a claim stemming from a November 11, 2015

vaccination.  In fact, as noted above, petitioner treated the finding of fact as to her date of vaccination as dispositive, voluntarily dismissing her petition in response.

In light of all of the above, petitioner did not have a reasonable basis for the filing of this petition.

## VI.    Conclusion

Petitioner's motion for attorneys' fees and costs is **DENIED**.  The clerk of the court is directed to enter judgment in accordance with this decision.[5]

**IT IS SO ORDERED.**

**<u>s/Daniel T. Horner</u>**
Daniel T. Horner
Special Master

---

[5] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party, either separately or jointly, filing a notice renouncing the right to seek review.